# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:16-CR-127 |
| NA'DEARDRA MAYHAMS, | (JUDGE CAPUTO) |
| Defendant. | |

## MEMORANDUM

Presently before me are pretrial motions filed by Defendant Na'Deardra Mayhams ("Mayhams") to sever (Doc. 240), for early disclosure of Jencks material (Doc. 241), to dismiss Count Twenty of the Indictment (Doc. 242), and to compel certain discovery (Doc. 243). For the reasons that follow, the motions will be denied.

## I. Background

Mayhams and co-Defendants Al Dunlap ("Dunlap"), Jaquan Henderson ("Henderson"), Truman Jones ("Jones"), Davon Beckford ("Beckford"), and Stephanie Walter ("Walter") were indicted by a grand jury on May 17, 2016. (*See* Doc. 23, *generally*).[1]

The events underlying the charges against Mayhams are as follows:

On February 9, 2016, the Bureau of Alcohol, Tobacco and Firearms ("ATF") executed an arrest warrant for Jones and a search warrant of his residence at 163 Charles Street, Wilkes-Barre, Pennsylvania, both of which had been issued by this Court. (*See* Doc. 2, 3-4). The warrants were issued after law enforcement had used a confidential informant to make five (5) controlled purchases from Jones during the previous three (3) months. (*See id.* at 4).

During the search of 163 Charles Street, agents recovered approximately $4,462, two loaded firearms, ammunition for both firearms, approximately 62 grams

---

[1] Henderson, Beckford, and Walter have since pled guilty. (*See* docket, *generally*).

of unpackaged heroin, 472 packets of heroin, packaging material, and 75 grams of marijuana from a bedroom used by Jones. (*See id*.).

That investigation also determined that a second bedroom in the house was used by Dunlap. (*See id*.). From that room agents recovered approximately five (5) grams of unpackaged heroin, 150 packets of heroin, 44 grams of cocaine/cocaine base, packaging material, a loaded Double Tap Derringer, and ammunition. (*See id*.).

Dunlap later advised law enforcement officials that he obtained the firearm from "Chyna", an individual determined to be Mayhams. (*See id*.). The firearm was provided to Jones for drugs he provided on consignment to Beckford, Mayhams' boyfriend. (*See id*. at 4-5).

A confidential informant (the "CI") was used to make a controlled buy of heroin from Beckford on February 11, 2016. (*See id*. at 5). The CI was instructed by Beckford to meet him at the Hilltop Apartments, Building 512, Roosevelt Street in Edwardsville, Pennsylvania. (*See id*.). Surveillance units observed Beckford exit Apartment 8 of Building 512, meet with the CI, and return directly to the same apartment. (*See id*.). The CI returned with 50 bags of heroin each marked with stamps identical to those found in the Charles Street residence occupied by Jones and Dunlap. (*See id*. at 6).

The CI was used to make a second controlled purchase of heroin from Beckford on March 3, 2016. (*See id*.). Beckford instructed the CI to meet him at the same location. (*See id*.). Beckford was observed exiting Apartment 8, entering the CI's car, and returning to Apartment 8. (*See id*. at 7). The substance purchased by the CI tested positive for heroin. (*See id*.).

On April 26, 2016, the CI attempted to contact Beckford to arrange a third controlled buy. (*See id*.). Mayhams, however, informed the CI that Beckford was incarcerated in New York and she was taking care of his business. (*See id*. at 8). The next day, the CI contacted Mayhams and arranged to meet at Hilltop Apartments to purchase a brick of heroin for $350. (*See id*.). Mayhams and the CI were observed

to conduct a hand-to-hand transaction. (*See id.*). Mayhams was then observed to walk to and enter Apartment 8 of Building 512. (*See id.*).

Law enforcement officials executed a federal search warrant on Apartment 8 on May 6, 2016. (*See id.* at 9). Four individuals, including Mayhams, were located therein. (*See id.*). A semi-automatic Cobra Model CA380 was located in a pink purse in Mayhams' bedroom. (*See id.*). A safe containing three bundles of heroin, identification documents for Mayhams, a holster, and .380 ammunition was located in that bedroom. (*See id.*). Mayhams admitted that the firearm belonged to her after she was taken into custody. (*See id.*). Law enforcement also recovered a cell phone from Mayhams with the same number used to arrange the April 27, 2016 controlled buy. (*See id.*). Also found in Mayhams' bedroom was an instruction manual for a Double Tap Derringer, the same firearm recovered from Dunlap's bedroom during the February 9, 2016 search of the Charles Street residence. (*See id.* at 10). Mayhams ultimately admitted that the firearm recovered from the Charles Street residence was the same firearm she had owned. (*See id.*). Law enforcement also recovered approximately 19 individual bags of crack cocaine from the apartment. (*See id.*).

Based on these events, Mayhams was charged in the Indictment with: (1) conspiracy to distribute heroin and cocaine base in violation of 21 U.S.C. § 846 (Count One); (2) distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (Count Eighteen); (3) possession with intent to distribute heroin and cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count Nineteen); and (4) possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. 924(c) (Count Twenty). (*See* Doc. 23, *generally*).

Mayhams has now filed pretrial motions seeking dismissal of Count Twenty of the Indictment, severance of her trial from that of co-Defendants Dunlap and Jones, for early disclosure of Jencks material, and to compel discovery. The Government filed an omnibus brief in opposition to the pretrial motions. The pretrial motions are thus ripe for disposition.

## II. Discussion

Mayhams, as stated, has filed pretrial motions to dismiss Count Twenty, for severance, for early disclosure of Jencks material, and to compel discovery. I will address the issues in that order.

### A. Dismissal.

Mayhams seeks dismissal of Count 20 of the Indictment charging her with possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c). (*See* Doc. 23, Count Twenty). According to Mayhams, the discovery that has been provided does not support the offense charged because it does not show that she "used the firearm at any time, or in any way related to drug trafficking crimes." (Doc. 269, 4). Instead, she says, the gun was found in a purse in her bedroom closest. (*Id*.). Further, she emphasizes that the Government "has failed to show any proof that the gun they seized was in Defendant Mayhams possession at the time, or that the gun was ever used in relation to any drug offenses." (*Id*.). Thus, she requests that the Court "drop the charge of possession of a firearm in furtherance of drug trafficking against her." (*Id*. at 5).

The Government opposes the motion, noting that a Rule 29 motion for judgment of acquittal is not appropriate until at least the close of its case, and that in the pretrial context it must only satisfy the requirements of Federal Rule of Criminal Procedure 7(c). (*See* Doc. 287, 12-17). Those requirements, the Government contends, are satisfied in the Indictment here, as the charging language tracks the operative statutes at issue. (*See id*. at 14-16). Specifically, the Government emphasizes that the Indictment identifies the date and location where the firearm was possessed, identifies the firearm by make, model, and serial number, and sets forth the underlying drug trafficking crime. (*See id*.). The Government thus concludes that this satisfies the mandates of Rule 7(c). (*See id*.).

Federal Rule of Criminal Procedure 7(c) provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the

4

offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion." Fed. R. Crim. P. 7(c). An indictment is facially adequate if it "'(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.'" *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (quoting *United States v. Vitillo*, 490 F.3d 314, 320 (3d Cir. 2007)). "Generally, an indictment will satisfy these requirements where it informs the defendant of the statute he is charged with violating, lists the elements of the violation under the statute, and specifies the time period during which the violations occurred." *Id*. (citing *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005)). In other words, the indictment may not be dismissed "unless it is so defective that it does not, by any reasonable construction, charge an offense" under the statute at issue. *Vitillo*, 490 F.3d at 324 (internal citation omitted).

The Indictment here satisfies the requirements imposed by Rule 7(c). Count Twenty enumerates the charging statute: 18 U.S.C. § 924(c). "The essential elements of a violation of 18 U.S.C. § 924(c) . . . are (1) the defendant committed either the crime of conspiracy to distribute and possess with intent to distribute a controlled substance or the crime of possession with intent to distribute; (2) the defendant knowingly possessed a firearm; and (3) the defendant knowingly possessed the firearm in furtherance of the crime of conspiracy to distribute or in furtherance of the crime of possession with intent to distribute.'" *United States v. Bobb*, 471 F.3d 491, 496 (3d Cir. 2006). The Indictment tracks the statutory language and charges that on or about May 6, 2016, in Luzerne County, Mayhams knowingly possessed a Cobra pistol, Model CA-380 .380 caliber, Serial Number CP 104851, in furtherance of her knowing and intentional possession with intent to distribute heroin. (*See* Doc. 23, Count Twenty). Count Twenty is facially sufficient, so it will not be dismissed. *See*, *e.g.*, *United States v. McMillan*, No. 15-305, 2018 WL 1035776, at *4 (M.D. Pa. Feb. 23,

5

2018) (denying motion to dismiss § 924(c) charge and noting that "[t]he separate issue of whether [the defendant] in fact possessed the handgun on the day in question is the province of the jury, not a pretrial matter.")

**B.  Severance.**

Mayhams next seeks to sever her trial from the trial of Dunlap and Jones. Mayhams first argues that severance is warranted because she risks a jury finding her guilty by association because was "improperly charged" with a conspiracy to distribute controlled substances. (*See* Doc. 267, 3-6). This, she elaborates, is because the evidence does nothing to show that she was part of the alleged conspiracy, so to try her with Dunlap and Jones would result in severe prejudice to her. (*See id*.). She also points to the admissibility of co-conspirator statements as a point of possible prejudice. (*See id*. at 6-8). Second, Mayhams claims that there may be potential *Bruton* issues with statements made by Dunlap or Jones. (*See id*. at 9-10). She further cites the possibility that she will be deprived of the "exculpatory testimony of the co-defendants." (*Id*. at 10).

The Government responds that none of Mayhams concerns support severance of her trial. (*See* Doc. 287, 17-25). First, the Government points to the fact that defendants may be charged and tried jointly. (*See id*. at 17-18). Additionally, while trials of joint defendants can be severed, the Government reiterates that severance is warranted only when there is a serious risk to the specific rights of one of the defendants or that the jury will be unable to make a reliable judgement about guilt or innocence. (*See id*. at 18). On that point, the Government contends that concerns of prejudicial spillover are limited where defendants are charged under the same conspiracy count. (*See id*. at 19). As a result, were Mayhams' motion granted, the Government would present nearly identical evidence at the separate trials to establish the existence of a conspiracy. (*See id*. at 20). And, to the extent evidence is introduced against a particular defendant, the question becomes whether the jury can compartmentalize that evidence. (*See id*.). The Government also notes that the

6

contention that it cannot prove a conspiracy is a determination that is for the jury to make. (*See id*. at 21). Finally, as to any potential *Bruton* issue, Mayhams has not identified any problem at present, and if she does, the Government can redact and respond to those issues accordingly. (*See id*. at 23).

"Federal Rule of Criminal Procedure 8 governs joinder of offenses and joinder of defendants." *United States v. Irizarry*, 341 F.3d 273, 287 (3d Cir. 2003). It states:

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged-whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8.

Rule 8(b) embodies the "the fundamental principle that the federal system prefers 'joint trials of defendants who are indicted together [ ]' because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993) (alteration in original)). Under Rule 8(b), "[i]t is not enough that defendants are involved in offenses of the same or similar character; there must exist a transactional nexus in that the defendants must have participated in 'the same act or transaction, or in the same series of acts or transactions,' before joinder of defendants in a multiple-defendant trial is proper." *United States v. Jimenez*, 513 F.3d 62, 82-83 (3d Cir. 2008) (citing Fed. R. Crim. P. 8(b); *Irizarry*, 341 F.3d at 287 n.4). Nevertheless, "[t]he mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series

7

of acts or transactions constituting an offense." *Irizarry*, 341 F.3d at 289 n.5 (quoting *United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988)).

Joinder was proper in the matter *sub judice* under Rule 8(b). Mayhams, along with co-Defendants Dunlap and Jones, were all charged with conspiring to traffic narcotics. Joinder of multiple codefendants on a single conspiracy charge, and on separate but related substantive offenses, is permissible. *See, e.g., United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991) (quoting *United States v. Somers*, 496 F.2d 723, 729-30 (3d Cir. 1974)); *United States v. Lane*, 474 U.S. 438, 447 (1986); *United States v. Price*, 13 F.3d 711, 718 (3d Cir. 1994). The Third Circuit observed in *Eufrasio* that Rule 8(b) expressly authorizes joinder of different substantive offenses under the umbrella of a single conspiracy charge, stating:

> The Rule permits joinder of defendants charged with participating in the same. . . conspiracy, even when different defendants are charged with different acts, so long as indictments indicate all the acts charged against each joined defendant (even separately charged substantive counts) are charged as . . . acts undertaken in furtherance of, or in association with, a commonly charged . . . conspiracy.

*Eufrasio*, 935 F.2d at 567. Indeed, joinder of such coconspirators in a single charging document is encouraged, *see United States v. Ward*, 793 F.2d 551, 556 (3d Cir. 1986), as the claim of conspiracy provides the requisite "common link" among defendants. *Somers*, 496 F.2d at 730.

Even though joinder was proper under Rule 8(b), severance may still be granted pursuant to Federal Rule of Criminal Procedure 14 if the potential prejudice outweighs the expense and time of separate trials that essentially retry the same issue. *See Zafiro*, 506 U.S. at 539, 113 S. Ct. 933. Rule 14(a) provides:

> Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

"It is well settled that defendants are not entitled to severance merely because

8

they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540, 113 S. Ct. 933. Severance should only be granted "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Urban*, 404 F.3d at 775 (quoting *Zafiro*, 506 U.S. at 539, 113 S. Ct. 933).

To prevail on a Rule 14 motion, a defendant has "to overcome a 'heavy burden' to justify severance." *United States v. Herrera-Genao*, 419 F. App'x 288, 294 (3d Cir. 2011) (citing *United States v. Console*, 13 F.3d 641, 655 (3d Cir.1993)). The defendant must demonstrate that "the denial of severance would lead to 'clear and substantial prejudice resulting in a manifestly unfair trial.'" *Urban*, 404 F.3d at 775 (quoting *United States v. Palma–Ruedas*, 121 F.3d 841, 854 (3d Cir. 1997), *rev'd on other grounds by United States v. Rodriguez–Moreno*, 526 U.S. 275, 119 S. Ct. 1239, 143 L. Ed. 2d 388 (1999)).

In the context of multiple defendants, the Third Circuit has instructed that prejudice sufficient to warrant severance may occur in the following situations: "(1) a 'complex case' involving 'many defendants' with 'markedly different degrees of culpability,' (2) a case . . . where evidence that is probative of one defendant's guilt is technically admissible only against a co-defendant, and (3) a case where evidence that exculpates one defendant is unavailable in a joint trial." *United States v. Balter*, 91 F.3d 427, 432-33 (3d Cir.1996) (citing *Zafiro*, 506 U.S. at 539, 113 S. Ct. 933).

In deciding whether to grant a severance motion, "the trial court should balance the public interest in joint trials against the possibility of prejudice inherent in the joinder of defendants." *Eufrasio*, 935 F.2d at 568 (citing *United States v. De Peri*, 778 F.2d 963, 984 (3d Cir.1985)). Ultimately, however, "[t]he decision to sever a trial is left to the sound discretion of the District Court." *United States v. Ginyard*, 65 F. App'x 837, 838 (3d Cir. 2003) (citing *Zafiro*, 506 U.S. at 538-39 ("Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.")).

The bases cited by Mayhams do not warrant severance. First, she only loosely speculates that her co-Defendants will provide exculpatory testimony at trial. But, "bare assertions that co-defendants will testify are insufficient to warrant separate trials." *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005) (citing *United States v. Boscia*, 573 F.2d 827, 832 (3d Cir. 1978)). "Four factors need be considered: "(1) the likelihood of co-defendant's testifying; (2) the degree to which such testimony would be exculpatory; (3) the degree to which the testifying co-defendants could be impeached; and (4) judicial economy." *Id*. at 182-83. "In addition, we have held that a defendant's claim that his co-defendants would testify on his behalf must be supported by the record, and the record must show more than simply the defendant's "request for declaration of [his co-defendants'] intent to testify." *Id*. (citing *United States v. Gonzalez*, 918 F.2d 1129, 1137 (3d Cir. 1990)). Mayhams has not provided any evidence indicating Dunlap and/or Jones intend to testify, nor has she explained how such testimony would be exculpatory in nature. Thus, she is not entitled to severance on this basis.

Second, concern that she will suffer from a prejudicial spillover effect as a result of evidence introduced against Dunlap or Jones does not warrant severance. For one, "acts committed by one in furtherance of the conspiracy [are] admissible against the other [co-defendants]." *United States v. Hart*, 273 F.3d 363, 370 (3d Cir. 2001). In addition, "'a defendant is not entitled to a severance merely because evidence against a co-defendant is more damaging than the evidence against the moving party.'" *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (quoting *United States v. Somers*, 496 F.2d 723, 730 (3d Cir.1974). "Instead, the relevant inquiry is 'whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility.'" *Id*. (quoting *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005) (internal quotation marks omitted)). The charges and evidence that will be presented here undermines the claim of prejudice because the case is "relatively straightforward and discrete, not involving overly technical or

scientific issues." *Id*. There is therefore no reason to believe that a jury will be unable to "compartmentalize" the evidence as it relates to Mayhams. *Id*. Moreover, I have no reason to doubt that the jury will follow my instructions at trial to consider the evidence separately as to each defendant and each count. *See id*. at 205-06; *United States v. Williams*, No. 06-719, 2009 WL 1285519, at *2 (E.D. Pa. May 7, 2009) ("[The Court] can ensure [Defendant] will receive a fair trial because it will issue jury instructions directing the jury to consider the evidence separately as to each defendant and each count.").

Third, Mayhams presents nothing more than speculation about potential *Bruton* issues, so that does not provide a reason for severance.[2] "As this matter presently stands . . . there is no *Bruton* issue and therefore no reason to grant a severance pursuant to *Bruton*." *United States v. Johnson*, No. 05-440, 2007 WL 3355599, at *2 (E.D. Pa. Nov. 9, 2007). Further, the Government will be required to provide any statements of any co-defendant before seeking to admit such statement at trial. This will give me the opportunity to review the statement and determine whether it can be redacted or whether it is inadmissible. Under these circumstances, any potential prejudice arising from a joint trial will be alleviated.

Lastly, Mayhams' claim that she was improperly charged with a conspiracy and that the evidence she has been provided does not support such a charge are not properly resolved by way of the instant motion. Those issues will be determined by the jury. Mayham will proceed to trial with Dunlap and Jones.

C. **Early Disclosure of Jencks Material.**

Mayhams requests an order compelling the Government to provide early disclosure of Jencks material. The Jencks Act states that in federal criminal

---

[2] In *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), the Supreme Court held that the introduction of a non-testifying defendant's out-of-court statement, which directly implicated his co-defendant by name, violated the Confrontation Clause right of the co-defendant.

11

prosecutions, the Government need not produce any statement or report made by a Government witness or prospective Government witness (excluding the defendant) until the witness has testified on direct examination at trial. *See* 18 U.S.C.A. § 3500(a). After direct examination, however, "the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in possession of the United States which relates to the subject matter as to which the witness has testified." *Id*. § 3500(b). Federal Rule of Criminal Procedure 26.2 has extended the Jencks Act so that production of statements is also required after testimony of a Government witness at a preliminary hearing, sentencing, probation hearing, detention hearing, or Rule 8 hearing. *See* Fed.R.Crim.P. 26.2(g).

A district court does not have the power to compel early production of Jencks material. *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir.1978); *United States v. McMillan*, No. 15-305, 2018 WL 1035776, at *3 (M.D. Pa. Feb. 23, 2018); *United States v. Moyer*, 726 F. Supp. 2d 498, 513 (M.D. Pa. 2010); *see also United States v. Maury*, 695 F.2d 227, 247 (3d Cir. 2012) ("the government has no obligation to produce Jencks material until the witness has testified."). Here, while the Government has indicated that it intends to provide Jencks material shortly before trial, (*see* Doc. 287, 27), and the Government may choose to do so as a courtesy, *see Murphy*, 569 F.2d at 773 n.5, nothing in the Jencks Act, the Federal Rules of Criminal Procedure, or Third Circuit precedent permits a district court to mandate early disclosure. As such, Mayham's motion will be denied.

### D. Compelled Discovery.

Mayhams' final motion requests an order compelling the Government to disclose several broad categories of evidence. (*See* Doc. 268, *generally*). Such evidence includes hearsay statements pursuant to Federal Rule of Evidence 807, expert reports, Federal Rule of Evidence 404(b) evidence, Federal Rule of Evidence 609 evidence, witness identities and statements, and the identities of confidential informants. (*See id*.). The Government opposes the motion, noting that it has not

identified any evidence it intends to use pursuant to Rules 404(b), 807, and 609, and it has already provided expert reports to Mayhams. (*See* Doc. 287, 29-33). The Government furthers indicates that it will continue to comply with its legal obligations and provide any additional discovery as it becomes available. (*See id*.).

Mayhams' motion to compel discovery will be denied without prejudice. She has failed to identify with any specificity items she is entitled to discover that has not been produced by the Government. The Government has acknowledged its obligation to comply with the mandates of *Giglio*, *Brady*, and the Jencks Act. In the absence of a more specific motion from Mayhams detailing the Government's failure to timely satisfy these requirements, there is no reason to believe the Government has not and will not do so. Moreover, Mayhams has not presented any basis to compel disclosure of the identify of the Government's confidential informant here. Thus, there is no reason to do so. *See*, *e.g.*, *United States v. Stanton*, 566 F. App'x 166, 168 (3d Cir. 2014) (holding that defendant's generalized "hope[ ] that the identity of the confidential informants would provide a basis for a hearing under *Franks*" was insufficient to compel disclosure); *United States v. Rivera*, 524 F. App'x 821, 827 (3d Cir. 2013) (denying motion to compel disclosure of a confidential informant based on defendant's "specula[tion] that the informant who completed the controlled buys would admit that the seller had not been Rivera"); *United States v. Taylor*, No. 15-214, 2018 WL 1960669, at *5 (M.D. Pa. Apr. 26, 2018) (denying motion to compel where "neither defendant [met] his burden of showing a specific need for the informants' identities" but instead "only generally speculate[d] that the testimony of the informants would help their cases and possibly reveal exculpatory evidence"). The requested discovery will not be compelled, but Mayhams may raise the issue again at the appropriate time if she is not timely provided material to which she is entitled under the aforementioned statutes and precedent.

13

### III. Conclusion

For the above stated reasons, Mayhams' pretrial motions will be denied. An appropriate order follows.

December 12, 2018  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge